**Jim D. LITTLE**

v.

**Edward C. SCHAFER, Richard J. Fleming, Individually and as Police Officers of Southside Place, James C. Elliott, Jimmy Kinzer, Wayne Blalock, Individually and as Police Officers of West University Place, City of Southside Place, City of West University Place.**

**C. A. No. 70–H–453.**

United States District Court,
S. D. Texas,
Houston Division.

Sept. 8, 1970.

George C. Dixie, Dixie, Wolf & Hall, Houston, Tex., for plaintiff.

John O. Kain, Powell, Tucker, Kain & Reedy, Houston, Tex., for Schafer, Fleming and City of Southside Place.

Thomas B. Weatherly, Paul E. Stallings, Vinson, Elkins, Searls & Connally, Houston, Tex., for Elliott, Kinzer, Blalock and City of West University Place.

MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS AS TO CERTAIN DEFENDANTS AND DENYING MOTION TO DISMISS AS TO OTHER DEFENDANTS

SEALS, District Judge.

Plaintiff, a University of Texas dental student, brings this action pursuant to 42 U.S.C. § 1983 against certain police officers of the City of West University Place and the City of Southside Place, alleging the deprivation under color of law of rights secured to him by the United States Constitution; and, through this court's pendent jurisdiction, against the two municipalities under the Texas Tort Claims Act, Vernon's Ann.Tex.Civ.St. art. 6252–19. The municipal defendants have moved to dismiss under the Tort Claims Act for failure to state a cause of action. In addition, the individual defendants have moved to dismiss the § 1983 action by reason of plaintiff's failure to exhaust State remedies. Jurisdiction of this court is properly invoked pursuant to 28 U.S.C. § 1343.

I.

The Texas Tort Claims Act, which became effective on January 1, 1970, struck a telling blow at the ancient doctrine of sovereign immunity, behind whose crumbling but still formidable fortress local governments had shielded themselves from responsibility for their employees' negligence. The innocent motorist run down by a reckless city health inspector, the property owner whose building is damaged by the city's careless blasting activities, the child injured by the negligent placing of a dangerous machine in a municipal park—all of these no longer find the door to recovery barred.

But the legislature took away with one hand what it had bestowed with the other. Some twelve exceptions follow the rule, cutting a broad swath through the expectations of those who naively sought a truly liberal reform of the sovereign immunity concept. Two of these exceptions furnish the coup de grace to plaintiff's claim against the two municipalities.

§ 14(10) of article 6252–19 provides that the Act shall not apply to:

"Any claim arising out of assault, battery, false imprisonment, or any other intentional tort. * * *"

Plaintiff attempts to avoid this language by pretending to base his claim, not on any assault theory, but on the cities' negligence in employing the police officers here involved and on the negligent

entrustment to them of their nightsticks. Plaintiff is aided by the Act's recent date—so recent that no Texas appellate tribunal has yet construed it. We thus confront the *enfant terrible* of the *Erie* rule: a State statute, the duty of whose initial interpretation is delivered into the unloving arms of the federal court.

The court is not, however, without illumination. First, the plain language of the exception vitiates employment of the fiction that plaintiff is not really speaking of assault. For the exclusion excepts any claim "arising out of" an assault. In seven other exceptions to § 14, the statute restricts its language to "any claim based upon." A charge of negligent hiring or negligent entrustment of a nightstick is arguably not "based upon" the assault which follows. But such a claim of negligence necessarily "arises out of" the subsequent assault. For a citizen's complaint about the negligent utilization of police officers has no meaning apart from those officers' acts or omissions which inure to the detriment of the complainant. The assault is the *sine qua non* of plaintiff's knowledge that municipal negligence exists.

Second, the assault exception of the Texas Act follows precisely the language of the Federal Tort Claims Act. 28 U. S.C. § 2680, and the federal statute has been abundantly construed. To cite but one example, the Fifth Circuit dealt with the question in United States v. Faneca, 332 F.2d 872 (5th Cir. 1964), in which complainant charged the Government with negligently allowing United States marshals to fire tear gas into a crowd. The court declined to suffer the fiction.

> "Nor can plaintiff recover under the Tort Claims Act for the 'negligent' firing on him by the group of marshals and Border Patrolmen. Section 2680(h) of title 28 excepts from the Act claims arising from intentional torts such as assault and battery. The tort plaintiff is complaining of is in essence assault and battery, and his allegations of negligence are not suffi-

cient to avoid section 2680(h)."—*Id.*, at 875.

Perhaps the truly controlling factor in our decision to thwart plaintiff's attempt to procure by indirection what forthrightness could not effect is our confidence as to the decision that Texas appellate courts will eventually render. In their continuing deference to legislative wisdom, those bodies long refused to abrogate the judicially created doctrine of sovereign immunity. Now that the legislature has spoken, it is inconceivable that Texas courts will fail to follow the legislators' obvious intent.

§ 14 furnishes yet another exception upon which plaintiff's claim against the municipalities must fail.

> "(9) Any claim based on an injury or death connected with any act or omission arising out of * * * the failure to provide or the method of providing, police or fire protection."

Negligent employment of police officers and negligent entrustment to them of nightsticks are surely embraced within "the method of providing police protection."

█ It is apparent that the Texas Legislature meant to avoid municipal liability for exactly the kind of police conduct involved in this case. And it is equally apparent that its efforts must be adjudged a resounding success.

## II.

The individual police officers against whom plaintiff seeks recovery under 42 U.S.C. § 1983 have moved to dismiss on the grounds that § 1983 requires plaintiff to exhaust his State administrative and judicial remedies before pursuing this action in Federal court. Whatever doubts may have previously existed on this issue in the Southern District of Texas were clarified by Judge Brown in the recent case of Hall v. Garson (5th Cir.) (430 F.2d 430, 1970). Dismissing the newly revised interpretation of § 1983 which several district courts have promulgated after a rereading of that

section's legislative history, Judge Brown held that such a rereading

"* * * has largely been estopped by one hundred years of litigation under § 1983. During this one hundred years of experience the cry that it was necessary for state judicial remedies to be exhausted or shown to be inadequate before Federal Court action to restrain state conduct could be taken has been heard repeatedly. It has, however, consistently fallen on unresponsive ears and been muffled by the Supreme Court."—*Id.*, at 435.

We are thus left with no room for doubt that exhaustion is not a prerequisite to relief under § 1983. It follows that jurisdiction has properly been invoked in this court against the defendant police officers.

Accordingly, it is ordered that the motion of defendants City of West University Place and City of Southside Place to dismiss for failure to state a cause of action be in all things granted. It is further ordered that the motion of defendants Schafer, Fleming, Kinzen, Elliott and Blalock, individually and as police officers of the two municipalities, be in all things denied.