IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 12, 2002 Session

## SANDRA YVONNE ELMORE  v. GREG CRUZ, et al.

Appeal from the Circuit Court for Hamilton County
No. 99-C-1491     Jackie Schulten, Judge

**FILED FEBRUARY 4, 2003**

**No. E2001-03136-COA-R3-CV**

In this case the Appellant/Defendant, City of Chattanooga, appeals the judgment of the Circuit Court for Hamilton County awarding the Appellee/Plaintiff, Sandra Yvonne Elmore, compensatory damages for injuries sustained as a result of her arrest and imprisonment by the Chattanooga Police Department.  We vacate the judgment of the Trial Court and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., joined.  HERSCHEL P. FRANKS, J., filed a concurring opinion.

Ronald D. Wells, Chattanooga, Tennessee, for the Appellant, City of Chattanooga

Jennifer H. Lawrence, Chattanooga, Tennessee, for the Appellee, Sandra Yvonne Elmore

**OPINION**

In the summer of 1998 Ms. Elmore  and her husband at the time, Darrell Elmore, were in the process of divorce and agreed to a mutual restraining order which was entered by the Court on June 8, 1998.  Thereafter, on August 17, 1998, Mr. Elmore called 911 and reported to the Chattanooga Police Department that he had a restraining order against Ms. Elmore and that she was harassing him at one of his stops as a Coca Cola route salesman.  The 911 police dispatcher advised Mr. Elmore that she would send the police. She then dispatched the call from Mr. Elmore and it was taken by Chattanooga police officer, Greg Cruz.

Officer Cruz requested verification that there was indeed a restraining order against Ms. Elmore, whereupon the dispatcher contacted the Hamilton County Circuit Court Clerk's office.  She was advised by the Clerk's office that a mutual restraining order had been signed by the Court, although it had not been served upon either party.  She then relayed this information to Officer Cruz who responded that he was on his way to pick up Ms. Elmore "for violating an order of protection."

After arriving at Ms. Elmore's place of employment Officer Cruz asked the receptionist there if he could see her. When Ms. Elmore appeared Officer Cruz advised her that she was under arrest for, according to Ms. Elmore's undisputed testimony , "breaking the order of protection violation." Ms. Elmore further testified that she told officer Cruz that there was a mutual restraining order but that there was no order of protection. Nevertheless, Officer Cruz arrested Ms. Elmore and transported her to the Hamilton County Jail. She arrived there at approximately 2:25 p.m. and was incarcerated. Ms. Elmore asserts that she was never booked for violation of an order of protection or any other offense and there is no evidence in the record to contradict this assertion.

Ms. Elmore testifies that the jail cell in which she was placed was small and "packed full of women", some of whom were drunk and one of whom was naked. Ms. Elmore further testifies that she had never been to jail before, even for a visit, and was "petrified" with fear. She also testifies that she was never told when she would be released.

It was subsequently discovered that Ms. Elmore had been arrested and imprisoned in error and she was released at approximately 3:45 p.m.

Ms. Elmore testified that she was unable to sleep for three days after her arrest and imprisonment. Her physician of thirty five years, Dr. Don Cannon, testified that, after her arrest and imprisonment, Ms. Elmore "was quite upset. She was not anything like she had been before. And she was anxious. She was uncertain of herself. Very insecure and felt threatened whereas previously she had no problems with that type of feeling." Other evidence indicates that after her arrest and imprisonment Dr. Cannon treated Ms. Elmore for "abdominal pain, anxiety, depression, insomnia, and other symptoms associated with stress." Dr. Cannon stated that he felt Ms. Elmore's symptoms "were directly related to her arrest and her stay in jail" and that she "will continue to suffer the consequences emotionally of her experiences related to her arrest and imprisonment for the rest of her life." Finally, Dr. Cannon testified that in his opinion Ms. Elmore would continue to require medication for manifestations of stress in the future.

By complaint filed on August 12, 1999, and amendment thereto on February 7, 2000, Ms. Elmore requested compensation for injuries suffered as a result of the false arrest and false imprisonment by Officer Cruz and the City of Chattanooga. Among other things, Ms. Elmore's complaint contends that their actions constituted a violation of T.C.A. 36-3-611 which governs the enforcement of orders of protection.

The case was tried without a jury on October 2, 2001. After presentation of evidence and argument of counsel, the Trial Court determined that, although Officer Cruz had made a mistake in arresting Ms. Elmore, "it's really the City of Chattanooga's negligence in training that caused this unfortunate event...." Therefore, the Court dismissed the case as to Officer Cruz and ruled that the

City was liable to Ms. Elmore for compensatory damages[1]. Notice of appeal was filed by the City of Chattanooga on December 26, 2001.

The sole issue we address in this opinion is, as restated, whether the City is immune from liability for injuries arising out of the false arrest and imprisonment of Ms. Elmore.

Our standard of review in a non-jury case is *de novo* upon the record of the proceedings below. There is no presumption of correctness with regards to a trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996). There is, however, a presumption that findings of fact by a trial court are correct and, absent evidence preponderating to the contrary, we must honor that presumption. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87 (Tenn.1993).

The City argues that it cannot be held liable because that portion of the Tennessee Governmental Tort Liability Act set forth at T.C.A. 29-20-205(2) provides that the removal of the immunity of governmental entities from suits for injuries caused by employee negligence does not include suits for injuries arising out of "false arrest and/or false imprisonment " nor does it allow damages for mental anguish.

Ms. Elmore argues that the City's actions were operational in nature and, therefore, not subject to immunity.

In *Matthews v. Pickett County*, 996 S.W.2d 162,164 (Tenn. 1999) the Tennessee Supreme Court set forth the following criteria for determining when an act is operational:

> A negligent act or omission is operational in nature and not subject to immunity when the act or omission: (1) occurs in the absence of a formulated policy guiding the conduct or omission; or (2) when the conduct deviates from an established plan or policy.

The Court in *Matthews* also found that failure to effect an arrest in accordance with a "statutory mandate" is a deviation from policy and is operational in nature.

The statutory mandate pertinent to enforcement of orders of protection is T.C.A. 36-3-611 which provides:

> (a) An arrest for violation of an order of protection issued pursuant to this part may be with or without warrant. Any law enforcement officer shall arrest the respondent without a warrant if:
> (1) The officer has proper jurisdiction over the area in which the violation occurred;

---

[1]The Trial Court's order awards Ms. Elmore damages in the amount of $25,000.00. The City does not object to the amount of damages awarded aside from its assertion of immunity.

(2)  The officer has reasonable cause to believe the respondent has violated or is in violation of an order for protection; and

(3) *The officer has verified whether an order of protection is in effect against the respondent.  If necessary, the police officer may verify the existence of an order for protection by telephone or radio communication with the appropriate law enforcement department.*  (emphasis added)

The record shows that at no time did Officer Cruz verify the existence of an order of protection in effect against Ms. Elmore although he informed her that she was being arrested for violating an order of protection.  Accordingly, Officer Cruz's actions violated T.C.A. 36-3-611(a)(3) and were, therefore, operational in nature.

We also note that the order entered into between Mr. and Ms. Elmore was, in fact, not an order of protection, but rather a restraining order.  Officer Cruz testified that he was confused about the difference between these two kinds of orders because the difference had not been fully explained to him prior to August of 1998 when he arrested Ms. Elmore. Officer Cruz further testified that "[i]mmediately after that there was a big revision in the Police Department and it was hammered out in very plain detail what the difference was."  It is undisputed that different procedures are required for enforcing an order of protection than for enforcing a mutual restraining order. It, therefore, stands to reason that if employees are not adequately trained to distinguish between these two types of orders those employees cannot be expected to enforce such orders in an appropriate manner.  In neglecting to train its employees to distinguish between an order of protection and a restraining order the City failed to formulate a policy regarding the proper enforcement of either type of order. Accordingly, for this reason also, we find the actions complained of were operational in nature.

Although we find that the City's actions were operational in nature it does not follow from that fact alone that the City's actions are not subject to immunity.

T.C.A. 29-20-205 provides in pertinent part as follows:

Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
 (1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
 (2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights;

Whether the action of a government employee is operational is only relevant in determining whether a  governmental entity is immune under sub-section (1) - if the action is operational, it is not discretionary and the governmental entity is not immune under sub-section (1).  However, the

governmental entity may yet be immune under one or more of the other exceptions to removal of immunity set forth in the statute. In this case the City asserts its immunity under subsection (2) of the statute. Specifically, the City argues that it is immune from suit for injuries arising out of Ms. Elmore's false arrest and false imprisonment and for damages for mental anguish.

T.C.A. 29-20-205(2) states that false arrest is one of the actions excepted from removal of immunity and it is, therefore, our determination that the City cannot properly be held liable for Ms. Elmore's injuries to the extent they are attributable to her false arrest. However, we disagree with the City's contentions that it is also immune from suit for false imprisonment and that Ms. Elmore may not receive damages for mental anguish.

In addressing the City's argument that it is immune from suit for false imprisonment we are compelled to note that T.C.A. 29-20-205(2) does not provide that the City retains immunity from all suits for injuries arising out of false imprisonment but only from suit for injuries arising out of "false imprisonment *pursuant to a mittimus from a court*". The evidence does not show that Ms. Elmore was imprisoned pursuant to a mittimus from a court; therefore, the City is not immune from her claim of false imprisonment.

The City relies upon the case of *Potter v. City of Chattanooga*, 556 S.W.2d 543 (Tenn. 1977) and argues that under the authority of that case it is immune for both false arrest and false imprisonment. In *Potter* the plaintiff initially filed a complaint against the defendant city for false arrest and assault and battery by a city police officer. Thereafter, the plaintiff amended her complaint to include the additional charge that the city was negligent in screening, testing and controlling its employees. The Court determined that the city was statutorily immune for the intentional torts of false arrest and assault and battery. The Court noted at page 545 of the opinion as follows:

It is apparent from a reading of the complaint, as amended, that the true bases of the injuries for which recovery of damages is sought are false arrest and assault and battery. The amendment to the complaint, while leveling additional charges of negligence against the City, does not alter the fact that the injuries that are the subject of the action "arose out of" the battery and the false arrest, and was not effective to avoid the immunity granted the City under [the statute].

The City appears to contend that Ms. Elmore's complaint is essentially a complaint for false arrest, that the charges of false imprisonment merely arise from the charges of false arrest and that, under *Potter*, the City should retain immunity from claims based on both false arrest and false imprisonment. We disagree that *Potter* supports this contention. The Court's determination that the city should retain immunity in *Potter* was not based upon a finding that the essence of the plaintiff's complaint was false arrest and, therefore, the alleged negligence of the city in screening, testing and controlling its employees should not alter the immunity retained by the city for false arrest. Instead the Court determined that the injuries sustained by the plaintiff arose out of false arrest and assault and battery, that these were the "true bases" of her injuries, not the negligence of the city in screening, testing and controlling its employees. In the instant case the testimony of Ms. Elmore as

-5-

well as the testimony of her physician, Dr. Cannon, support a finding that the mental and physical injuries which she sustained arose out of both her false arrest and her false imprisonment and that each was a true basis of her injuries. As previously noted, Ms. Elmore testified that she was petrified with fear during her incarceration and Dr. Cannon testified that the symptoms exhibited by Ms. Elmore "were directly related to her arrest and her stay in jail."

The City next argues that Ms. Elmore's claims and damages are based, in large part, on mental anguish and that "in view of T.C.A. 29-20-205(2), it is clear that the City retains immunity from damages for mental anguish."

As set forth above, T.C.A. 29-20-205(2) provides that a governmental entity retains immunity from suit for injury proximately caused by the negligent act of its employee "if the injury arises out of ... the infliction of mental anguish". However, as stated in *Limbaugh v. Coffee Medical Center, et al*, 59 S.W.3d 73, 79 (Tenn. 2001), the Tennessee Supreme Court has recognized that this section of the statute applies to *intentional* torts:

> ... a general waiver of immunity from suit for personal injury claims is provided in section 29-20-205 "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment," unless the injury arises out of one of several enumerated exceptions to this section, such as *the intentional tort exception*. Specifically, this exception bars claims for injuries arising out of "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, *infliction of mental anguish*, invasion of right of privacy, or civil rights." (emphasis added)

The final judgment of the Trial Court in this case does not indicate that any of the damages awarded to Ms. Elmore were based upon a finding that the City engaged in the intentional infliction of mental anguish. Accordingly, the City's argument is without merit.

For the foregoing reasons we vacate the judgment entered in this case and remand with instructions that the Trial Court determine what, if any, portion of Ms. Elmore's injuries are attributable to false imprisonment and that it award damages solely on the basis of those injuries. Costs of appeal are adjudged against the City of Chattanooga.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE