IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 12, 2003 Session

## JOHN S. DOE v. RANDALL E. PEDIGO, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-380-95      Harold Wimberly, Judge**

**FILED JUNE 30, 2003**

**No. E2002-01311-COA-R3-CV**

Plaintiff John S. Doe brought this action against Dr. Randall E. Pedigo, Knox County Sheriff Timothy Hutchison, and Knox County, Tennessee.  Plaintiff sued Dr. Pedigo and Sheriff Hutchison in their individual and official capacities, alleging liability under 42 U.S.C. 1983 and  T.C.A. sections 8-8-302, 8-19-301 and 29-20-205.  The events which form the basis for Plaintiff's complaint occurred on June 13, 1994, when Dr. Pedigo, who was then the Knox County Chief Medical Examiner,  injected Plaintiff with an incapacitating drug without Plaintiff's permission, and for the purpose of Dr. Pedigo's sexual gratification, took photographs of him in the nude.  The Trial Court granted summary judgment to Knox County, to Sheriff Hutchison in both his individual and official capacity, and to Dr. Pedigo in his official capacity.  We affirm the Trial Court's judgment in part and vacate in part.

**Tenn.R.App.P 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Vacated in Part; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., joined.  CHARLES D. SUSANO, JR., J., filed an opinion concurring in part and dissenting in part.

Herbert S. Moncier, Knoxville, for the Appellant, John S. Doe

John S. Owings and Robert C. McConkey, III, Knoxville, for the Appellees Knox County, Tennessee, Randall E. Pedigo in his official capacity, and Timothy Hutchison in his official capacity.

Dean B. Farmer and Keith L. Edmiston, Knoxville, for the Appellee Timothy Hutchison in his individual capacity.

### OPINION

On the evening of June 13, 1994, the Plaintiff met with Dr. Pedigo for the purpose of accompanying and observing him in the event he received any calls to investigate crime scenes that would require his attention as Chief Medical Examiner for Knox County.  The Plaintiff, who was

a minor at the time, had met Dr. Pedigo through Plaintiff's father, an acquaintance of Dr. Pedigo. Plaintiff had an interest in a medical career at the time and hoped to gain some experience and insight into the medical profession by accompanying Dr. Pedigo. Plaintiff also planned to follow and observe Dr. Pedigo the following day as he performed surgeries at the University of Tennessee Medical Center.

In the early evening, Dr. Pedigo and Plaintiff drove around in Dr. Pedigo's vehicle, making various stops and performing errands. Although Dr. Pedigo was "on call" that evening, he did not receive a call to investigate a crime scene, and at a certain point in the evening, Dr. Pedigo suggested that they go to his condominium, which they did.

Dr. Pedigo had told Plaintiff that for his safety, because he might be exposed to blood while accompanying Dr. Pedigo, he would have to administer a hepatitis B vaccine injection to Plaintiff. When it was fairly late in the evening, Dr. Pedigo told Plaintiff it was time for his injection and had him undress and change into a hospital gown. Unbeknownst to Plaintiff, Dr. Pedigo had mixed the vaccine with a dose of Versed, an incapacitating drug which caused Plaintiff to become unconscious. After Plaintiff became unconscious, Dr. Pedigo removed Plaintiff's clothing and took photographs of him.

Plaintiff filed this action on June 2, 1995, against Dr. Pedigo, in both his individual capacity and official capacity as Chief Medical Examiner; Timothy Hutchison, in both his individual capacity and official capacity as Sheriff of Knox County; and Knox County. As noted above, Plaintiff asserted theories of liability under, *inter alia*, 42 U.S.C. 1983 and T.C.A. sections 8-8-302, 8-19-301 and 29-20-205. The Defendants answered and filed motions for summary judgment.

On May 17, 2002, the Trial Court granted summary judgment on all claims in favor of Knox County and Sheriff Hutchison individually and officially. The Court granted summary judgment in favor of Dr. Pedigo on all claims except those for medical malpractice and false imprisonment. On appeal, Plaintiff questions whether the Trial Court erred in granting summary judgment to the Defendants.

In *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000) the Tennessee Supreme Court stated the following as to the standard of review specifically applicable to summary judgments:

> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v.*

> *Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900
> S.W.2d 23, 26 (Tenn. 1995).

We first address Plaintiff's claims under T.C.A. 29-20-205, a section of the Governmental Tort Liability Act ("GTLA"), which provides in relevant part as follows:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> (1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
>
> (2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights. . .

As regards Dr. Pedigo, taking all of the proof in the record in the light most favorable to Plaintiff, there is no action alleged to have been taken by Dr. Pedigo which could reasonably be described as "negligent." His testimony in several depositions contained in the record removes any doubt that all his actions regarding the Plaintiff were done willfully and intentionally. The GTLA, by its express terms, removes liability only for "injury proximately caused by a *negligent* act or omission." (Emphasis added.)

However, assuming *arguendo* that Dr. Pedigo was a Knox County employee acting "within the scope of his employment," Knox County could still be liable under the GTLA if, but only if, Plaintiff's injuries could be shown to have been proximately caused by Knox County's negligent act or omission in failing to prevent Dr. Pedigo from committing an intentional tort not listed in section 29-20-205(2) against Plaintiff. The Supreme Court's opinion in the case of *Limbaugh v. Coffee Medical Center*, 59 S.W.3d 73 (Tenn.2001) makes this proposition clear.

The *Limbaugh* Court held as follows:

> [W]e hold that section 29-20-205 of the GTLA removes immunity for injuries proximately caused by the negligent act or omission of a governmental employee except when the injury arises out of *only those specified torts enumerated in subsection (2).*

59 S.W.3d at p.84 (emphasis in original). In *Limbaugh*, the Court specifically determined that the defendant, Coffee Medical Center, "was indeed negligent in failing to take affirmative action to protect Ms. Limbaugh from the foreseeable risk that she would be harmed by [its employee] Ms. Ray[.]" 59 S.W.3d at p.81. Our inquiry in the present case is whether Knox County and/or Sheriff

Hutchison could reasonably be found negligent in failing to take affirmative action to protect Plaintiff from a foreseeable risk of harm from Dr. Pedigo. Construing all of the evidence in the light most favorable to Plaintiff, we must answer this question in the negative.

Dr. Pedigo admitted that he began taking pictures of unconscious patients for his sexual gratification "about 1992." He also stated that he had previously had young males accompany him in the performance of his duties as Medical Examiner, but that "it didn't happen on very many occasions." However, there is nothing in the record which suggests that Sheriff Hutchison or any other Knox County employee was, or should have been, aware of Dr. Pedigo's propensity to surreptitiously sedate and photograph young men.

Sheriff Hutchison's affidavit states the following in this regard: "I did not, and Knox County, Tennessee did not, know, authorize, approve or acquiesce in, and we had no way of knowing or suspecting, that Dr. Pedigo engaged in illegal or improper acts with young males or had propensities to do so." Dr. Pedigo testified that Sheriff Hutchison "would have had no way to know" that he sometimes had males accompany him to observe his surgical or Medical Examiner duties, nor that Dr. Pedigo had Plaintiff with him on the night of June 13, 1994. Plaintiff testified in his deposition that he was aware of no independent evidence that Sheriff Hutchison knew of Dr. Pedigo's propensities with young males.

Plaintiff argues that Sheriff Hutchison and Knox County were aware of Dr. Pedigo's treatment for alcohol and drug addiction, which began in September of 1991. Dr. Pedigo testified that he underwent inpatient treatment for several weeks, and intensive outpatient treatment at a halfway house, in Memphis for a total of four months, during a time when he was Chief Medical Examiner. Assuming that the Sheriff and Knox County were aware of Dr. Pedigo's alcohol and drug addiction and treatment, which we must under our summary judgment standard, we believe that this knowledge does not render the acts of which Plaintiff complains in any way foreseeable. Even with the benefit of hindsight, there is simply no logical or predictable nexus between a chemical dependency problem and an inclination to secretly sedate young men without their knowledge or consent. As the Supreme Court noted in *Limbaugh*, there is "no liability. . .where the defendant neither knows nor has reason to foresee the danger or otherwise to know that precautions are called for." 59 S.W.2d at p.80.

The *Limbaugh* case is thus distinguishable from the present case, in which there is no evidence from which a reasonable person could find that either Sheriff Hutchison or Knox County were negligent in failing to protect Plaintiff from a foreseeable risk of harm from Dr. Pedigo. We affirm the Trial Court's summary judgment on Plaintiff's theories of liability under the GTLA.

Plaintiff's complaint also contains claims under 42 U.S.C. 1983, which states in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

We first address the issue of Dr. Pedigo's 42 U.S.C. 1983 liability in his individual capacity. The United States Supreme Court addressed the difference between individual or personal-capacity claims and official-capacity claims as follows in the case of *Kentucky v. Graham*, 105 S.Ct. 3099, 473 U.S. 159, 87 L.Ed.2d 114 (1985):

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See, *e.g., Scheuer v. Rhodes,* 416 U.S. 232, 237-238, 94 S.Ct. 1683, 1686-1687, 40 L.Ed.2d 90 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon, supra,* 469 U.S., at 471-472, 105 S.Ct., at 878. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

105 S.Ct. at p. 3105; 473 U.S. at p.165-166. (Emphasis in original.)

At the hearing on the summary judgment motion, the Court found as follows:

> With regard to these motions, it is clear, from the undisputed facts which relate to the actual events which form the basis for this complaint, that the Defendant Pedigo was not acting under color of any state law or in connection with any governmental position or duty.
>
> With regard to these actions, the actions which form the basis of this complaint, Defendant Pedigo did not claim to be acting in any of his part-time positions with the county government, nor were his actions consistent with any such positions. So he was not performing any act or apparent duty of any of his part-time county positions, but

was clearly pursuing a personal goal and was neither intending [n]or pretending [n]or exercising any official responsibility or action.

His complained-of acts toward Plaintiff were purely private. It is the nature of the acts performed that is complained of which the court is looking at here. So these actions, being unrelated to anything but his personal pursuit and interest, the court finds there's no basis for recovery in any of these other capacities against the sheriff, against Knox County, or against the Defendant Pedigo in his capacity as an official.

The Trial Court's written order states that "summary judgment should be GRANTED as to. . . Randall E. Pedigo in his individual and official capacities on his alleged violations of the plaintiff's civil rights and that [the] claims against those parties are hereby DISMISSED."

The question before us is whether the actions of Dr. Pedigo, when viewed in the light most favorable to Plaintiff, can be considered to have been taken "under color of" state law within the meaning of 42 U.S.C. 1983. The United States Supreme Court has considered and defined the phrase "under color of" as follows: "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *U.S. v. Classic*, 61 S.Ct. 1031, 313 U.S. 299 (1941); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on other grounds* by *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

It is clear from the testimony in the record, and essentially undisputed, that the reason Plaintiff was with Dr. Pedigo that evening was to observe him "making his rounds" as Knox County Chief Medical Examiner. Plaintiff, who was then interested in a medical career, testified as follows:

The interesting, exciting thing was that [Dr. Pedigo] was the medical examiner. In his conversations with me, he emphasized that this was very important, exciting part of his work, and it would be interesting to witness this.

It is also undisputed that Dr. Pedigo was "on call" twenty-four hours a day, subject to receiving a call to investigate and examine a crime scene or victim at any time. Plaintiff testified that at the beginning of the evening he expected to be driving around all night with Dr. Pedigo. At some point in the evening, Dr. Pedigo suggested that they return to his condominium to await any calls that might come in. Once they were at his condominium, Dr. Pedigo insisted on giving Plaintiff an injection of hepatitis B vaccine, for the purpose of protecting Plaintiff in case he should come into contact with blood at a crime scene.

Plaintiff alleged that before giving him the injection, Dr. Pedigo told him to undress and change into a hospital gown, and then proceeded to touch and fondle him in an inappropriate manner, under the guise of giving Plaintiff an "anatomy lesson." Dr. Pedigo then administered the injection that rendered Plaintiff unconscious and proceeded to photograph him in the nude.

Although the Trial Court is correct in describing Dr. Pedigo's ultimate goals and actions regarding Plaintiff as private, personal and unauthorized, we believe a legitimate issue has been raised as to whether Dr. Pedigo misused his power and position as Chief Medical Examiner in order to coerce Plaintiff into a situation where he could be taken advantage of. We are of the opinion that a reasonable person could conclude from the record before us that Dr. Pedigo's misdeeds were made possible only because he was clothed in the authority of Chief Medical Examiner. We therefore vacate the Trial Court's order granting Dr. Pedigo summary judgment in his individual capacity under 42 U.S.C. 1983.

The Trial Court's grant of summary judgment under section 1983 as against Dr. Pedigo in his official capacity, Sheriff Hutchison, and Knox County must be affirmed, however. The United States Supreme Court has made it clear that these entities cannot be held liable under the theory of *respondeat superior*:

> [T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.

*Monell v. Department of Social Services*, 98 S.Ct. 2018, 2036, 436 U.S. 658, 691 (1978) (Emphasis in original.)

The *Monell* court set forth the test for municipal liability under section 1983 as follows:

> Local governing bodies, therefore, can be sued directly under §1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other

§ 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels. As Mr. Justice Harlan, writing for the Court, said in *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 167-168, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970): "Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law."

*Monell*, 98 S.Ct. at p.2035-2036, 436 U.S. at p.690-691 (1978) (Footnotes omitted.)

In the present case, the action alleged to be unconstitutional does not implement or execute a policy officially adopted by Knox County, nor does Dr. Pedigo's alleged behavior constitute a "custom or usage" with the force of law. As already noted above, no official of Knox County, including those in the Sheriff's office, knew or had reason to know of Dr. Pedigo's alleged illegal or improper activities. Consequently, the Trial Court was correct in granting summary judgment to Knox County and its employees in their official capacity under section 1983.

Plaintiff also alleged that Sheriff Hutchison acted in joint concert with Dr. Pedigo, or in a civil conspiracy with him, in order to violate Plaintiff's constitutional rights. There is no evidence in the record to support this theory and the Court's grant of summary judgment on this ground is affirmed.

We next address Plaintiff's claims which are based upon his allegation that Dr. Pedigo was a "deputy sheriff" of the Knox County Sheriff's Department. Plaintiff's assertions in this regard are governed by T.C.A. 8-8-301 *et seq.*, which state as follows:

*T.C.A. 8-8-301*

No sheriff, whether elected or appointed, nor any surety on the sheriff's bonds, shall be liable for any wrongs, injuries, losses, damages or expenses incurred as a result of any act or failure to act on the part of any deputy appointed by the sheriff, whether the deputy is acting by virtue of office, under color of office or otherwise.

*T.C.A. 8-8-302*

Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which

the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

*T.C.A. 8-8-303*

(a) The governmental immunity of the county in which the sheriff serves is waived for purposes of § 8-8-302, but to an extent not in excess of the amount of the surety bond executed for that county's sheriff pursuant to § 8-8-103.

At the outset we note that T.C.A. 8-8-301 serves to shield Sheriff Hutchison from any liability for an act or omission on the part of any deputy, and we affirm the Court's grant of summary judgment in his favor under this statute.

Although Sheriff Hutchison states in his affidavit that Dr. Pedigo "was never an officer, deputy or employee of the Knox County Sheriff's Department," we find that Plaintiff has presented evidence sufficient to raise a question of fact as to whether Dr. Pedigo was in fact a deputy sheriff. This evidence includes Dr. Pedigo's testimony that he was a "bonded deputy," the affidavit of Brian Sturgill, a former Assistant Chief Deputy, which states that Dr. Pedigo was a deputy sheriff "until the time [Mr. Sturgill] resigned on August 26, 1994," and a copy of Dr. Pedigo's photo identification card which states, "CHIEF RANDY PEDIGO is a Deputy of Knox Co. Sheriff's Dept." and is signed by Sheriff Tim Hutchison.

Assuming, without deciding, that Dr. Pedigo was a deputy sheriff for the purposes of T.C.A. 8-8-302, he must have been "acting by virtue of or under color of the office" in order for Knox County to be potentially liable for his actions. This Court recently examined that phrase in the case of *J.W. ex rel. Watts v. Maury County*, and stated the following:

> Sections 8-8-301 to 303 of the Tennessee Code Annotated do not define the phrase "by virtue of or under color of the office." In *Corder,* the Court noted that the sheriff's deputy was off duty and had been drinking alcohol at a club with friends. *Corder v. Metro. Gov. Of Nashville and Davidson County,* 852 S.W.2d 910, 911 (Tenn.Ct.App.1993). He stopped at a convenience store and the victim, an acquaintance of the officer, asked the officer for a ride home. *Id.* The evidence indicated that the officer showed the victim his gun not in any official capacity, but rather to tease the victim and cause him to "stop begging for a ride." *Id.* at 914. The officer was wearing his uniform but had his firearm in his automobile. *Id.* at 914. The Court concluded that, under these circumstances, "the shooting was not by virtue of or under color of the office of Deputy Sheriff." *Id.* at 914.
> This case presents a closer question. Here, [defendant] Jett was contacted by [the victim's] Mother at least in part because of his

-9-

position as an SRO [School Resource Officer]. Jett utilized his status as an SRO to persuade Mother to trust him to allow J.W. to sleep at his apartment.

A criminal statute, section 39-16-402 of the Tennessee Code Annotated, is instructive on the interpretation of the phrase "by virtue of or under color of office." Section 39-16-402 provides:

(a) A public servant commits an offense who, with intent to obtain a benefit or to harm another, intentionally or knowingly:

... (2) Commits an act under color of office or employment that exceeds the servant's official power....

(b) For purposes of subdivision (a)(2), a public servant commits an act under color of office or employment who acts or purports to act in an official capacity *or takes advantage of such actual or purported capacity.*

Tenn.Code Ann. § 39-16-402 (1997) (emphasis added). Thus, when a deputy sheriff intentionally or knowingly uses his office to facilitate a crime, he is acting under color of his office under this statute. ***See also*** Tex. Penal Code Ann. § 39.02 (Vernon 2002); ***Bryson v. Texas,*** 807 S.W.2d 742 (Tex.Crim.App.1991).

*J.W. ex rel. Watts v. Maury County*, an opinion of this Court filed in Nashville on March 11, 2003, Rule 11 application for permission to appeal filed May 12, 2003.

Dr. Pedigo testified that he drove Plaintiff around that evening in a vehicle provided to him by Knox County which was equipped with a police radio and blue lights and a siren in the grill. Plaintiff testified in his deposition that Dr. Pedigo, in the course of inviting him to accompany him, "said he always received calls throughout the night to do certain functions as medical examiner or as a law enforcement officer." Plaintiff stated as follows regarding Dr. Pedigo:

[H]e said that he worked not only as a physician and as medical examiner, but he was a deputized law enforcement officer, and that he also performed functions and would be in that regard. He was explaining to me that was why he – He said, in fact, almost with some sense of satisfaction that he always carried a gun with him twenty-four hours. That was one of the first conversations that we had together, was about his duties as the law enforcement officer.

\*          \*          \*

He was always, throughout the entire time, receiving calls. He had the police radio on. He was listening to different broadcasts. . . What he actually said to me was that he was a deputized law enforcement officer, and this vehicle had been given to him by – He specifically

-10-

> mentioned the name, and I had never heard this name before, Tim
> Hutchison, and he told me that he was Sheriff of Knox County.

Plaintiff and Dr. Pedigo testified that they stopped that evening at a gasoline refueling station reserved for law enforcement officers only.

In his deposition Plaintiff testified that "the whole purpose of this evening was that he told me that he would be on call, that he was the medical examiner of Knox County, that he was a deputized law enforcement officer." His affidavit reiterates that "I would not have come to Knoxville to be with Pedigo on the evening of June 13, 1994 had it not been for Pedigo inviting me to be with him as he performed his duties as medical examiner and law enforcement officer for Knox County."

As noted above, the injection Dr. Pedigo administered to Plaintiff contained a combination of hepatitis B vaccine, which Dr. Pedigo testified Plaintiff required for his safety should he have come in contact with any blood that evening, and the drug Versed, with which Dr. Pedigo knowingly planned to render Plaintiff unconscious. Dr. Pedigo testified that "because [the] hepatitis B vaccine was expensive, [he] got it free from Knox County." Dr. Pedigo obtained the vaccine administered to Plaintiff from the Knox County jail facility.

Considering all the above in the light most favorable to the Plaintiff, we are unable to say that no trier of fact could reasonably find that Dr. Pedigo "intentionally or knowingly use[d] his office to facilitate" the crimes committed against Plaintiff.[1] As did the Court in *Watts*, we find that under these circumstances, assuming for summary judgment purposes that Dr. Pedigo was in fact a deputy sheriff at the time, whether Dr. Pedigo acted "by virtue of or under color of his office" is a genuine issue of material fact for the trier of fact to determine. We therefore vacate the Trial Court's grant of summary judgment in favor of Knox County under T.C.A. 8-8-302.

Plaintiff also asserted claims of a separate cause of action under T.C.A. 8-19-301 against Sheriff Hutchison for alleged violation of his oath of office and improper or neglectful performance of the duties of his office. We have considered these claims and find them to be without merit. We also find no error in the Trial Court's decision to deny Plaintiff's motion for a change of venue in selecting a jury outside of Knox County.

For the foregoing reasons the judgment of the Trial Court granting summary judgment to Dr. Pedigo in his individual capacity under 42 U.S.C. 1983 is vacated. The summary judgment in favor of Knox County under T.C.A. 8-8-302 is vacated. The remainder of the Trial Court's judgment is affirmed. Costs on appeal are adjudged one-half against John Doe and his surety and one-half against

---

[1]Dr. Pedigo pled guilty to several criminal charges stemming from his actions regarding Plaintiff.

-11-

Knox County and Dr. Pedigo in his individual capacity, and the case is remanded for further proceedings consistent with this opinion.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE