IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 11, 2012 Session

## CANDACE YOUNG v. WASHINGTON COUNTY, TENNESSEE

**Appeal from the Circuit Court for Washington County**
**No. 10195C      Thomas J. Seeley, Jr., Judge**

---

**No. E2011-02189-COA-R3-CV-FILED-OCTOBER 29, 2012**

---

The plaintiff, a probationer, charged Washington County with negligent oversight and supervision, after she was sexually assaulted and raped by a private entity's probation officer. The trial court ruled in favor of the county, and the plaintiff appeals. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

Tony Seaton and Robert Bales, Johnson City, Tennessee, for the appellant, Candace Young.

John Rambo, Jonesborough, Tennessee, for the appellee, Washington County, Tennessee.

**OPINION**

**I.  BACKGROUND**

Michael Moore, currently 63 years of age, started his probation career in July 1997, with Mid South Court Services/Comprehensive Community Services ("CCS"). Moore worked for probation agencies in Washington County ("the County") for twelve years prior to the incident at issue.[1]  In 2007, one of the general sessions judges in the County, the

---

[1]According to the materials in the record, prior to becoming a probation officer, Moore was in the Air Force for 26 years. He retired as a Senior Master Sergeant/First Sergeant, 81st Security Police Forces,
(continued...)

Honorable James Nidiffer, purportedly encouraged Moore and another probation officer to start their own agency. Subsequently, Judge Nidiffer signed a written "Probation Proposal" prepared by Moore and his partner. Moore then retained an attorney to organize the company, Washington County Probation Agency, LLC ("WCPA"). Regarding WCPA, Moore testified in his deposition as follows:

> Q. Tell me what you did after you have the LLC Incorporated and did the appropriate legal documents like that?
>
> A. Well, this was, I, I remember asking [the attorney] once, once we got the paperwork back from, the Secretary of the State, if there was anything else that I had to do. And he said, no, this, this is it, you're, you're good to go. . . .

On June 26, 2007, Judge Nidiffer sent a letter to all probation agencies in the County that he would exclusively assign all of the cases from his court to WCPA. The new agency started on July 1, 2007, and probation files previously assigned to Moore and his partner simply transferred from their prior private probation agency to WCPA. It is undisputed that no one associated with the County checked to see whether WCPA was licensed with the Tennessee Private Probation Council ("the Council").

In March 2008, the plaintiff, Candace Young, then 19 years old, pled guilty to misdemeanor shoplifting in Judge Nidiffer's court. She was sentenced to probation services and assigned to WCPA. Moore became Young's probation officer, and she began her monthly reporting to him in June 2008. After a probation meeting on January 22, 2009, Young alleged that she had been sexually assaulted and raped by Moore.

In March 2009, Moore, on behalf of WCPA, petitioned the Council for licensure. The application was denied in June 2009.

Young filed her complaint in this matter on June 8, 2009. She named as defendants

---

[1](...continued)
Keesler Air Force Base, Mississippi. By deposition, Moore related that he has an Associate's Degree in Administrative Management from the Community College of the Air Force and attended numerous schools while in the military. In paperwork associated with the probation agency, Moore asserted that he had over 20 years experience working within the Military Justice System as a Supervisor, Superintendent, Instructor and First Sergeant. He noted that he is a graduate of the U.S. Air Force NCO Academy and U.S. Air Force First Sergeant Academy.

the County, Moore,[2] and WCPA.

In her complaint, Young alleged that the County's immunity under the Governmental Tort Liability Act, Tennessee Code Annotated section 29-20-201, et seq., was removed for her injuries that were proximately caused by the negligent acts or omissions of Judge Nidiffer within the scope of his employment.[3] She argued that the County failed in its duty "to protect probationers under the[ ] supervision" of the court, and that the County "knew or should have known that private probation services are required to be license[d] by the Tennessee Private Probation Services Coun[cil]." She claimed that Judge Nidiffer assigned her to the supervision of WCPA without knowledge or concern whether the agency was legally operating, and that her injuries were a foreseeable consequence of the County's failure to investigate and supervise the private probation agencies operating in the County, resulting in her being subjected to the supervision of an unlicensed private probation agency where she was injured.

The trial was conducted on August 8, 2011. Before the trial commenced, Young entered into an order of dismissal with prejudice as to Moore and WCPA. The County remained as a defendant.

Testifying by deposition, Judge Nidiffer indicated that while he was aware there are certain guidelines that must be followed for private probation agencies, he was not aware the state had enacted regulations regarding licensure by the Council. In regard to the start up of WCPA, he related he told Moore "that he needed to get a lawyer, and see if it was possible for [Moore] to [start a probation agency] . . . ." Judge Nidiffer admitted that he never asked if WCPA was licensed, but opined that it was not his responsibility.

At the time of trial, Donna W. Hancock served as the Executive Director of the Council, an agency within the Department of Commerce and Insurance of the State of Tennessee. Hancock observed that the Council serves to regulate private probation agencies, and has the authority to revoke the licenses of such agencies and to levy civil penalties. She testified that "[n]o private entity may provide probation services in this State unless it has registered with and is approved by the Council." Hancock stated that the rules of the Council became effective in 2005. According to Hancock, it is the responsibility of those who assign

---

[2]On May 15, 2009, Moore was criminally charged with one count of rape and one count of sexual battery. *See State v. Michael Moore*, No. 35288 (Washington County). According to Moore, he entered an *Alford* plea in the case on April 20, 2010.

[3]Young noted she did not sue Judge Nidiffer in his individual or official capacity. We note that Tennessee Code Annotated section 40-35-302 does not give a judge of a sessions court the authority to contract for probation services.

cases to probation officers to ensure that they are licensed. Hancock related that the Council did not have any knowledge of WCPA's existence until it received the agency's application.

Hancock testified that WCPA was denied a license because of a deficiency in Moore's education and bond. She opined that Moore's experience and his associate's degree may have been sufficient to meet the requirement of the four-year degree requisite for a CEO, especially since past experience in an organization providing services in criminal justice or social work may be substituted for the bachelor's degree. She noted that although WCPA's bond was in the correct amount, it lacked an expiration date.

As part of WCPA's application, Moore had submitted his background check. As verified by the Tennessee Bureau of Investigation, it indicated no criminal history. Hancock testified that Moore's credentials, at that point in time, qualified him to work as a probation officer. While the licensing process was pending, the Council learned from a media outlet of Moore's indictment on charges of rape and sexual battery of a client. The Council subsequently directed the issuance of a cease and desist order to WCPA "for operating an unlicensed agency."[4]

Hancock acknowledged that no rule or regulation specifically requires judges or counties to verify the licensing of private probationary agencies with the Council. She testified further that since her employment, no communication had been sent from the Council to the state's trial judges alerting them of the requirement that private probation services be licensed and registered with the Council. She observed that the Council was concerned that judges in the state were not aware of the licensing requirements.[5] Additionally, she noted that her office does not solicit reports from the trial courts inquiring about private probation activity in the counties.

At the close of Young's case, the trial court granted the County's motion for involuntary dismissal. In the final judgment entered on September 29, 2011, the trial court held "[t]he injuries suffered by Plaintiff, Candace Young, were not proximately caused by the Defendant, Washington County's failure to follow or enforce the licensing process . . . ." The judgment incorporated the ruling from the bench:

THE COURT: All right. Basically, this is a negligence case. . . . [T]he

---

[4]It is unclear whether the letter was sent.

[5]The minutes of the Council also note that "Judge Chris Craft asks that a letter be sent to all the General Sessions Judges in the State stating that it is illegal to assign cases to unlicensed private probation entities."

-4-

question is to me -- was there a breach of duty and which proxima[te]ly caused injury to Ms. Young? And you -- you know we're all familiar with the elements of negligence. There's a duty, a breach, proximate cause, and now they say also legal cause, and then damages. And the key to proximate cause really is the question -- foreseeability. And the question in this case seems to me to be was it foreseeable to Judge Nidiffer that any failure on his part to determine that Michael Moore and his agency -- the Washington County Probation Agency -- was licensed, would result in Ms. Young or any other probationer being sexually assaulted by Mr. Moore. It's another way of putting it -- is there anything in the licensing process that would have alerted Judge Nidiffer to the likelihood that Mr. Moore would sexually assault a probationer? And it really does come down to -- should Judge Nidiffer have known that Mr. Moore had some propensity or there was some real risk that Mr. Moore would sexually abuse a probationer, basically as a result of his not being licensed. We know that Mr. Moore worked for CCS -- a probation agency -- for some eleven years. There's nothing in the record to indicate that he had any prior problems assaulting anybody, whether sexual or otherwise. There's nothing that would indicate he had been guilty of any violent acts toward anyone or property prior to his being authorized by Judge Nidiffer to accept probationers. . . .

In the record before this Court, there is nothing to indicate -- that would have indicated to Judge Nidiffer that Michael Moore had any propensity to sexually assault Ms. Young. There's nothing that this Court could find that was in the licensing process . . . that would have alerted Judge Nidiffer to the likelihood that Mr. Moore would sexually assault a probationer. For all these reasons, the Court has to find in favor of the Defendant, Washington County. In addition, I am also of the opinion that Judge Nidiffer probably has judicial immunity in this. I was looking at judicial immunity, which was raised initially, but it also says with respect to that, "In determining whether or not there's judicial immunity for an act of a Judge and the Judge therefore be given absolute immunity you generally consider four factors. (1) Whether the precise act complained of is a normal judicial function or whether the act is normally performed by a Judge." Well, we know that the Judges decide who's going to probation in their courts. "(2) Whether the act occurred in the courtroom or appropriate adjunct spaces such as the Judge's chambers." Well, basically he appointed Moore and his agency in the courtroom, and I don't know where he actually signed the proposal, but that's basically a judicial act. "(3) Whether the controversy centered around a case pending before the Court." Well, we've got Ms. Young's case. "(4) Whether the parties dealt with the Judge,

-5-

or the acts, or was directly out of visit with the Judge in his or her official capacity." Well, we know that he met with Mr. Moore and talked to Mr. Moore about appointing him as a probation officer, and Judge Nidiffer was acting in his judicial capacity. So I think Judge Nidiffer in all likelihood enjoyed judicial immunity in this, even if he made a wrong decision or omitted to make a decision he should have made. But in any event, [Young] ha[s] failed to prove proximate cause that any action by Judge Nidiffer proximately caused the assault on Ms. Young. . . .

Young filed a timely notice of appeal.

## II. ISSUES

The issues raised by Young are restated as follows:

1. Did the trial court err by finding that the County was not liable for its failure to investigate and supervise WCPA.

2. Did the trial court err in finding that the County's breach of its duty was not a proximate cause of Young's injuries.

3. Did the trial court err by limiting its holding only on the actions of Judge Nidiffer, rather than evaluating the negligence and failures of others in the County.

4. Did the trial court err in applying a more restricted foreseeability test than what is required by case law in this state.

## III. STANDARD OF REVIEW

In a civil case heard without a jury, we review the trial court's factual findings de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). With respect to legal issues, this court's review is de novo with no presumption of correctness. *Graham v. Caples*, 325 S.W.3d 578, 581 (Tenn. 2010). The construction of statutes and rules and regulations, along with their application to the facts, are questions of law reviewed by us without a presumption of correctness. *Gautreaux v. Internal Med. Educ. Found., Inc.*, 336 S.W.3d 526, 531 (Tenn. 2011).

This cause was dismissed after the close of Young's case. The trial court granted a Rule 41.02 involuntary dismissal ("After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief . . . If the court grants the motion for involuntary dismissal, the court shall find the facts specifically and shall state separately its conclusion of law and direct the entry of the appropriate judgment.").

Under a Rule 41.02(2) motion, "the trial judge must impartially weigh and evaluate the evidence in the same manner as though he were making findings of fact at the conclusion of all of the evidence for both parties, determine the facts of the case, apply the law to those facts, and, if the plaintiff's case has not been made out by a preponderance of the evidence, a judgment may be rendered against the plaintiff on the merits." *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977). "If a plaintiff's case has not been established by a preponderance of the evidence, then the case should be dismissed if the plaintiff has shown no right to relief on the facts found and the applicable law." *Bldg. Materials Corp. v. Britt*, 211 S.W.3d 706, 710-11 (Tenn. 2007).

When the trial court has seen the witnesses and heard the testimony, especially when issues of credibility and the weight of testimony are involved, we must extend considerable deference to the trial court's findings of fact. *Houser v. Bi-Lo, Inc.,* 36 S.W.3d 68, 71 (Tenn. 2001). However, we are in the same position as the trial judge in evaluating proof that is submitted by deposition, and may independently assess the weight and credibility of such testimony. *Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 732 (Tenn. 2002).

## IV. DISCUSSION

Young argues that the County was responsible for ensuring that the laws of this state regarding private probation agencies were satisfied. She contends that the County failed to determine whether WCPA had been approved by the Council and failed to investigate and supervise the entity. She asserts that as a direct and proximate result of the County's breach, she was injured.

An initial issue to address is whether the County is immune from suit pursuant to the discretionary function exception in the Tennessee Governmental Tort Liability Act ("the GTLA").

# TENNESSEE GOVERNMENTAL TORT LIABILITY ACT

County liability is addressed in the GTLA, Tennessee Code Annotated sections 29-20-101, et seq. The GTLA removes county governmental immunity for certain negligent acts of its "employees." The GTLA defines the term "employee" as follows: "Employee means and includes any official whether elected or appointed . . . of a governmental entity . . . ." Tenn. Code Ann. § 29-20-102(2). Thus, a general sessions judge would be an "employee" of his or her county within the meaning of the GTLA. *See State ex rel. Winstead v. Moody*, 596 S.W.2d 811, 813-14 (Tenn. 1980).

Pursuant to Tennessee Code Annotated section 29-20-201, governmental entities are immune from suit for injuries arising from activities "wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tennessee Code Annotated section 29-20-201 codifies the common law rule that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities." Thus, the GTLA forecloses suits against governmental entities that cause injury when exercising or discharging their duties. Exceptions are outlined at Tennessee Code Annotated section 29-20-205. The exceptions permit a suit against a governmental entity when an employee of that entity acting within the scope of his or her employment negligently causes injury to another. A governmental entity remains immune from suit, however, if the injury results from a discretionary act of the governmental entity regardless of whether that discretion was abused. Tenn. Code Ann. § 29-20-205(1).

In *Moore v. Houston County Board of Education*, 350 S.W.3d 612 (Tenn. Ct. App. 2011), a panel of this court recently addressed the case law on this issue:

The TGTLA does not define the term "discretionary function." *See Lucas v. State*, 141 S.W.3d 121, 128 (Tenn. Ct. App. 2004). However, our Supreme Court, in *Bowers v. City of Chattanooga*, 826 S.W.2d 427 (Tenn. 1992), adopted the planning-operational test to assist courts in analyzing whether the negligent act or omission of a governmental entity is a discretionary function. *Bowers*, 826 S.W.2d at 430-31. Under the planning-operational test, courts are to distinguish governmental acts that are performed at the "planning" level from those performed at the "operational" level:

decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to

immunity.

*Bowers*, 826 S.W.2d at 430.

\* \* \*

Our Supreme Court applied the planning-operational test in *Limbaugh v. Coffee Medical Center*, 59 S.W.3d 73 (Tenn. 2001), to determine whether a nursing home's failure to follow employee disciplinary guidelines was a discretionary function for which immunity was available under the TGTLA. In *Limbaugh*, a nursing assistant employed by a state nursing home physically assaulted and seriously injured Mrs. Limbaugh, a ninety-year-old resident at the facility. Prior to assaulting Mrs. Limbaugh, the employee had demonstrated a propensity for violence toward patients. The administrator of the nursing home testified that the home had standards for disciplining an employee who had exhibited combative behavior; the Court found that the standards were not followed in the case of the employee who assaulted Ms. Limbaugh. In analyzing whether the nursing home's failure to implement its disciplinary policy was a discretionary function, the Court discussed the planning-operational test and noted:

> Decisions that rise to the level of planning or policy-making are considered to be discretionary acts requiring judicial restraint and are, therefore, not subject to tort liability. On the other hand, decisions that merely implement preexisting policies and regulations are considered to be operational in nature and require the decision-maker to act reasonably in implementing the established policy. If the policy, regulation, or other standard of procedure mandates specific conduct, then any employee reasonably complying with that direction will not abrogate the entity's immunity if the action furthers the underlying policies of the regulation.

*Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 85 (Tenn. 2001) (citing *Chase v. City of Memphis*, 971 S.W.2d 380, 384 (Tenn. 1998)). The Court ultimately reasoned that because the nursing home "negligently failed to follow the guidelines designed to prescribe the proper disciplinary measures to impose," the discretionary function did not bar recovery. *Id.* at 85-86.; *see also Haney v. Bradley Cnty. Bd. of Educ.*, 160 S.W.3d 886, 900 (Tenn. Ct. App. 2004) (finding that the failure to implement an early-dismissal policy adopted by the

board of education was an operational decision not a discretionary decision).
. . .

*Moore*, 358 S.W.3d at 616-617.

In *Giggers v. Memphis Housing Authority*, 363 S.W.3d 500 (2012), the Tennessee
Supreme Court recently reviewed the planning-operational test:

> To determine whether a governmental entity is entitled to immunity for a
> discretionary decision, this Court applies the "planning-operational test."
> *Bowers v. City of Chattanooga*, 826 S.W.2d 427, 430 (Tenn. 1992). A
> governmental entity is immune from suit for actions involving "planning or
> policy-making." *Helton v. Knox Cnty.*, 922 S.W.2d 877, 885 (Tenn. 1996)
> (quoting *Bowers*, 826 S.W.2d at 430). When the act is merely "operational,"
> the entity is not immune. *Id.*
>
> In *Bowers*, we determined that a planning decision usually involves
> consideration and debate regarding a particular course of action by those
> charged with formulating plans or policies. *Bowers*, 826 S.W.2d at 431; *see
> also Helton*, 922 S.W.2d at 885. A planning decision frequently requires a
> governmental entity to create policies or plans, formulate specifications or
> schedules, allocate resources, or determine priorities. *Bowers*, 826 S.W.2d at
> 431. Planning or policy-making decisions are not subject to tort liability, and
> a review of these decisions requires judicial restraint. *Limbaugh*, 59 S.W.3d
> at 85.
>
> Operational decisions, however, implement "preexisting laws, regulations,
> policies, or standards" that are designed to guide the actions of the
> governmental entity. *Bowers*, 826 S.W.2d at 431. An operational decision
> requires that the decision-maker act reasonably when implementing preexisting
> policy. *Limbaugh*, 59 S.W.3d at 85. Unlike a planning or policy-making
> decision, an operational decision does not involve the formulation of new
> policy."

*Id.* at 507-08.

This state's legislature has spoken on the issue of private probation services. We find
the legislation instructive.

Pursuant to Tennessee Code Annotated section 40-35-302 (misdemeanor sentencing),

a court may order an eligible defendant placed on probation to be supervised by a private agency that has been established for the purpose of supervising defendants convicted of misdemeanors. Tenn. Code Ann. § 40-35-302(f). Under Tennessee Code Annotated section 40-35-302(f), the judge clearly has the discretion to choose which agency will supervise a defendant.[6] Subsection (g) of that statutory provision sets out the qualifications that an entity supervising misdemeanor probationers must meet. Tennessee Code Annotated section 40-35-302(g)(1)(A) states that a private entity providing probation services shall be required to perform all of the following:

(i) Provide a report to the clerk of the criminal court and general sessions court in each judicial district in which the entity proposes to provide misdemeanor probation services on a quarterly basis in a form and manner as is specified by the clerk . . . ;

(ii) Provide an application form to all of the criminal court and general sessions court judges in each judicial district in which the entity proposes to provide misdemeanor probation services. The application shall be on a form and in a manner specified by the judges and shall contain all of the information required by subdivision (g)(1)(E)

\* \* \*

Tennessee Code Annotated section 40-35-302(g)(1)(B) sets out

[t]he following minimum education standards . . . required for certain employees of an entity established for the purpose of supervising misdemeanor probationers:

(i) The chief executive officer of an entity offering probation supervision shall have a bachelor's degree from an accredited university in any of the following fields: criminal justice, administration, social work or the behavioral sciences and two (2) years of experience in criminal justice or social work;

---

[6]The Code of Judicial Conduct in Canon 3 provides that "referrals shall be made impartially and on the basis of merit" and that "[a] judge shall avoid . . . favoritism . . . ." Tenn. Sup. Ct. R. 10, Canon 3(C)(5). A 2008 opinion of the Tennessee Attorney General provides that "where a judge harbors a good-faith belief that one such service is superior to another, considerations of merit may result in some companies receiving more business than others. Disproportionate referrals based on simple favoritism, however, run counter to the Code of Judicial Conduct." Opinion No. 08-175 (Nov. 18, 2008).

-11-

provided, that four (4) years of professional administrative experience with an organization providing services in criminal justice or social work may be substituted for the bachelor's degree; and

(ii)    An employee responsible for providing probation supervision and employed by an entity shall have at least four (4) years of experience in a criminal justice or a social services agency providing counseling services or shall have a bachelor's degree or associate's degree from an accredited college or university . . . .

The implementing regulations of Tennessee Code Annotated section 16-3-909 set forth certain requirements that private entities must satisfy in order to provide probation services in this state. *See* Tenn. Comp. R. & Regs. 1177-1-.03. Within Title 16, Part 3, section 909, we find the duties of the Council outlined:

(a)  The purpose of the council is to ensure that uniform professional and contract standards are practiced and maintained by private corporations, enterprises and entities rendering general misdemeanor probation supervision, counseling and collection services to the courts.  To such end, the council shall:

> (1) Provide oversight of private entities;
> (2) Promulgate uniform professional standards and uniform contract standards for private entities;
> (3)  Establish forty (40) hours of orientation for new private probation officers and twenty (20) hours of annual continuing education;
> (4) Promulgate rules and regulations regarding noncompliance with the uniform professional standards and uniform contract standards;
> (5)  Promulgate rules and regulations requiring periodic registration of all private entities;
> (6)  Publish an annual summary report; and
> (7) Promulgate rules and regulations requiring criminal records checks of all private probation officers.

(b)  All rules and regulations promulgated pursuant to subsection (a) shall be promulgated in accordance with the Uniform Administrative Procedures Act

. . . .

Tennessee Code Annotated section 16-3-910 provides that

[t]he council has the power:

> (1) To establish fees sufficient to pay the annual expenses of the council; and
> (2) In a lawful proceeding under the Uniform Administrative Procedures Act . . . assess civil penalties, in accordance with rules adopted pursuant to the Uniform Administrative Procedures Act, for violations of statutes, rules or orders enforceable by the council.

Pursuant to the statutory authority above, the Council has promulgated rules governing private probation agencies. Pursuant to Tenn. Comp. R. & Regs. 1177-1-.03(1), a private probation agency such as WCPA is required to register with the Council ("No private entity may provide probation services in this state unless it has registered with and is approved by the Council. . . ."). Tenn. Comp. R. & Regs. 1177-1-.05(1)(a) mandates that private probation entities

> [p]rovide an application form to all of the criminal court and general sessions court judges in each judicial district in which the entity proposes to provide misdemeanor probation services. Such application shall be on a form and in a manner specified by the criminal court and general sessions court clerk under the supervision of the judges and shall contain all of the following information:
>
> * * *
>
> 4. The names of the employees who will provide services, their credentials and their position with the entity;
>
> 5. A sworn statement that the credentials of all employees meet the minimum standards listed in rule 1177-1-.06 of this chapter;
>
> * * *
>
> **9. Proof of current registration and approval by the Council to provide misdemeanor probation services.**

(Emphasis added).[7]  Tenn. Comp. R & Regs. 1177-1-.05(b) notes that "[o]nce the private entity has been approved to provide services, the entity shall supply a quarterly report to the clerk of the criminal court and general sessions court in each judicial district in which the entity proposes to provide misdemeanor probation services on a quarterly basis in a form and manner specified by the clerk . . . ."

Tenn. Comp. R. & Regs. 1177-1-.06 tracks Tennessee Code Annotated section 40-35-302 regarding the education and experience necessary for employees of a private probation entity that provides misdemeanor probation supervision:

> (a)  The chief executive officer shall have a bachelor's degree from an accredited university in any one (1) of the following fields:  criminal justice, administration, social work or the behavioral sciences, and two (2) years experience in criminal justice or social work.  Upon approval by the Council, four (4) years of professional administrative experience with an organization providing services in criminal justice or social work may be substituted for the bachelor's degree; and
>
> (b)  Each employee who is responsible for providing probation supervision shall have at least four (4) years of experience in a criminal justice or a social services agency providing counseling services or shall have a bachelor's and/or an associate's degree from an accredited college or university in any of the following fields:  criminal justice, administration, social work, or the behavioral sciences.

Tenn. Comp. R. & Regs. 1177-1-.07(1) provides that "[a] registration as a private entity expires one (1) year after the date of its issuance and becomes invalid unless renewed."

The provisions regarding private probation agencies clearly contemplate the involvement of county employees such as judges and court clerks.

In *Brown v. Hamilton County*, 126 S.W.3d 43 (Tenn. Ct. App. 2003), we held that "[i]t is well-settled that an act or omission is considered operational and immunity is removed when . . . the conduct deviates from an established plan or policy." *Id.* at 48 (citing *Chase v. City of Memphis*, 971 S.W.2d 380, 384 (Tenn. 1998); *Matthews v. Pickett Cnty.,* 996 S.W.2d 162, 164 (Tenn. 1999). In our view, like the nursing home administrators in *Limbaugh*, the County's employees were charged with following the relevant statutes and

---

[7]This provision tracks the language of Tennessee Code Annotated section 40-35-302, but adds the requirement that the entity notify the appropriate court that the entity has been approved by the Council.

-14-

rules and regulations regarding private probation services. The applicable provisions were not followed. We find that the actions by the County regarding WCPA were not policy decisions. Rather, the actions were operational in nature, not discretionary, and immunity was removed. *See Limbaugh*, 59 S.W.3d at 85; *Haney v. Bradley Cnty. Bd. of Educ.*, 160 S.W.3d 886, 900 (Tenn. Ct. App. 2004)..

With immunity removed, the issue becomes whether Young has proven the elements of a negligence claim.

## NEGLIGENCE

The elements of negligence that must be proved to recover based on a claim of general negligence are as follows:

> In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal cause.

*Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)).

Causation, or cause in fact, means that the injury or harm would not have occurred "but for" the defendant's negligent conduct. *See Caldwell v. Ford Motor Co.*, 619 S.W.2d 534, 543 (Tenn. Ct. App. 1981). As noted in *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993), the Supreme Court has provided as follows:

> Causation and proximate cause are distinct elements of negligence, and both must be proven by the plaintiff by a preponderance of the evidence. *Bradshaw [v. Daniel]*, 854 S.W.2d at 869; *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991); *Smith v. Gore*, 720 S.W.2d 738, 749 (Tenn. 1987). "Causation (or cause in fact) is a very different concept from that of proximate cause. Causation refers to the cause and effect relationship between the tortious conduct and the injury. The doctrine of proximate cause encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Injuries and Future Consequences*, 90 Yale L.J. 1353, 1355 n. 7 (1981). Thus, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact

has been established. *McKellips v. Saint Francis Hosp.*, 1987 Ok 69, 741 P.2d 467 (Okl. 1987). "Cause in fact, on the other hand, deals with the 'but for' consequences of an act. 'The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct.'" *Id.* at 470 (quoting Prosser and Keeton, The Law of Torts 266 (5th ed. 1984)).

Once it is established that a defendant's negligent conduct was the actual cause of a plaintiff's injury or harm, the question becomes whether the policy of the law will extend responsibility for that negligent conduct to the consequences that have occurred. "[L]egal responsibility must be limited to those causes which are so closely connected with the result and are of such significance that the law is justified in imposing liability. *Doe v. Linder Constr. Co.,* 845 S.W.2d 173, 178 (Tenn. 1992). Proximate, or legal, cause is "a policy decision made by the legislature or the courts to deny liability for otherwise actionable conduct based on considerations of logic, common sense, policy, precedent and our more or less inadequately expressed ideas of what justice demands or of what is administratively possible and convenient." *White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998). A three-pronged test of proximate causation provides as follows:

> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991) (citations omitted).

The proximate cause of an injury is not required to "be the sole cause, the last act, or the one nearest to the injury provided it is a substantial factor in producing the end result." *Haynes v. Hamilton Cnty.*, 883 S.W.2d 606, 611-12 (Tenn. 1994). If the injury giving rise to a plaintiff's cause of action was not reasonably foreseeable, then there is no proximate cause and no liability for negligence. *Ray Carter, Inc. v. Edwards*, 436 S.W.2d 864, 867 (Tenn. 1969). However, "the foreseeability requirement is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred." *Mason ex rel. Mason v. Metro. Gov't of Nashville and Davidson Cnty*., 189 S.W.3d 217, 222 (Tenn. Ct. App. 2005) (citing *McClenahan*, 806 S.W.2d at 775). It is sufficient that harm in the abstract could reasonably be foreseen. *Shell Oil Co. v. Blanks*, 330 S.W.2d 569, 572 (Tenn. Ct. App. 1959).

Young argues that if the County had investigated and supervised WCPA, it would have discerned that the agency was not licensed, she would not have been assigned to it for probationary services, and, accordingly, she would not have been injured by Moore. This argument, however -- that the injury would not have occurred but for her being assigned to WCPA -- is a "but for" argument addressing causation rather than proximate cause.

As noted by the County, the assault suffered by Young was not caused by a judge failing to check on the standing of a license of a probation agency after a long-time probation officer had changed employers. The assault resulted from the intentional but unforeseeable actions of Moore. In this case, Moore had successfully served as a probation officer for twelve years and under four judges in the general sessions courts of the County. Young failed to produce any proof that prior to the incident with her, Moore had shown any propensity for conduct that would alert a reasonably prudent person that he represented a danger to others. The failure of WCPA to be licensed was not Moore's lack of experience, propensity to hurt others, a criminal history, or any other element that made him unfit to serve as a probation officer. The application process with the Council would not have uncovered any warning sign to indicate Moore was likely to harm others. His criminal history was clear. Young cannot assert that Moore was unqualified to serve as a probation officer or that he had demonstrated any propensity for wrong doing that would have precluded him from working as a probation officer. She simply contends that the failure of Judge Nidiffer to verify a license for an agency leads to liability for the County for the intentional tort committed by Moore.

In *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992), the Supreme Court observed: "**The plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility . . . .**" *Id.* (emphasis added.). The injuries to Young were not a reasonably foreseeable probability of the County's failure to investigate and supervise and confirm the license for WCPA. Therefore, the injuries were not proximately caused by the County's omission. We must affirm the trial court's decision.

## V. CONCLUSION

The judgment of the trial court is affirmed. This case is remanded, pursuant to applicable law, for such further proceedings as are necessary. Costs of the appeal are adjudged against the appellant, Candace Young.

_____
JOHN W. McCLARTY, JUDGE

-17-